JOHN W. HINSDALE *v.* A. G. THORNTON and others.

Where a purchaser of land takes from the bargainor a paper writing purporting to be a deed, but which, on account of defects therein, can only be allowed the effect of an agreement to make title; or as furnishing a ground to have the instrument converted into a deed on the ground of mistake, he acquires no interest that is subject to execution.

This was a CIVIL ACTION, heard upon the complaint and demurrer thereto, before his Honor *Judge Buxton*, at Spring Term, 1875, of the Superior Court of CUMBERLAND county.

The complaint alleged : That before the commencement of the action, A. G. Thornton, one of the defendants, was the owner, and in possession of certain lands therein fully described; that on or about Feb. 20th, 1866, said Thornton bargained and sold, and attempted in good faith to convey, by two paper writings purporting to be deeds, the fee simple for the said lands executed by himself to James W. Lancashire, William H. Morehead and Melvin Lowery, composing the firm of Lancashire, Morehead & Lowery. The consideration of the said pretended deeds was $1,000 in cash then paid to A. G. Thornton, and the promissory note of the co-partnership unsecured, for the sum of $2,500, payable to the order of said Thornton twelve months after date. The lands were not worth more than one thousand dollars, but that the firm was induced to purchase them at the price of thirty-five hundred dollars by material misrepresentation of facts by A. G. Thornton.

Said paper writings were delivered and received in good faith as valid deeds and said firm was put in possession of the premises under the same, but they have never been registered according to law. The lands were purchased for partnership purposes and were occupied and used as such.

Said paper writings, as was afterwards discovered, were defective, for want of a seal, which was left off either through

fraud or through mistake and inadvertence, contrary to the wishes and intention of all the parties thereto.

On the 10th of March, 1868, the interest of A. G. Thornton in said lands was levied on, and sold on the 1st of June, 1868, by the Sheriff of Cumberland county under a *fi. fa.* issuing upon a judgment recovered in the Court of Pleas and Quarter sessions of Cumberland county at March Term, 1868, in favor of John W. Hinsdale, administrator of Mrs. Maria Johnson and against A. G. Thornton, F. W. Thornton, R. W. Thornton and J. W. Lett, the execution being tested of March Term, and returnable to June Term, 1868. F. W. Thornton and W. D. Rayner became the purchasers at the price of four hundred and fifteen dollars; with full notice of the possession and claim of the firm of Lancanshire, Morehead & Lowery.

F. W. Thornton and J. W. Lett were abundantly responsible for the judgment in favor of J. W. Hinsdale, administrator, and that the execution was levied at the special request of Lett, upon the interest of A. G. Thornton in the lands aforesaid as well as all other lands claimed by said Thornton in the county of Cumberland.

Since the said sale the sheriff has made and executed to the purchasers a proper deed for said lands.

On the 5th of May, 1868, A. G. Thornton was duly adjudged a bankrupt in the District Court of the United States for the Cape Fear District of North Carolina, and that he scheduled the said promissory note for $2,500 as held by him in his own right and that said note has since come into the hands of his assignee in bankruptcy who now holds the same.

On the 8th of January, 1870, A. G. Thornton received his final discharge in bankruptcy. About the 1st of July, 1870, F. W. Thornton and W. D. Raynor by deed or deeds in fee simple conveyed to the said A. G. Thornton their interest in the said premises.

On the 17th day of May, 1869, the interest of James W.

Lancanshire in said premises was sold by the sheriff of Cumberland county under a writ of *Ven. Ex.* returnable to May Term, 1869, of the Superior Court, execution having been levied upon the same August 5th, 1867, when John W. Hinsdale became the purchaser at the sum of $39.26 which he has paid to the Sheriff, and has received a deed from said sheriff for the land.

On the 14th day of November, 1870, R. & J. McCaskell recovered a judgment in the Superior Court of Cumberland county against J. W. Lancanshire, as surviving partner of the firm of Lancanshire, Morehead & Lowery; (Morehead and Lowery were then dead) upon a partnership debt. Execution was issued thereupon returnable to Spring Term, 1871, and was levied upon the lands aforesaid. On the 3d of April, 1872, the premises were sold under said execution, when John W. Hinsdale became the purchaser for the sum of five dollars and received the Sheriff's deed therefor.

Before the commencement of this action the plaintiff demanded of the defendants, F. W. Thornton and W. D. Raynor that they should convey the legal title to said premises to him, with which demand the said defendants refused to comply.

That the plaintiff demanded of A. G. Thornton, before the commencement of this action, that he convey the legal title in said premises to the plaintiff, with which demand he also refused to comply.

The complaint demanded judgment:

1. Setting up and declaring the trust in respect to said premises, in such of the said defendants, as may now hold the legal title thereto to the use of the said plaintiff, and adjudging that the plaintiff is the beneficial and equitable owner thereof, and entitled to call for a conveyance to him of the legal estate in the same, free and discharged from any claim of said defendants or any of them.

2. That the defendants or such of them as may have con-

trol thereof shall produce and deliver up to this plaintiff the Sheriff's deed aforesaid conveying A. G. Thornton's interest in said premises to W. D. Raynor and F. W. Thornton, and the said deeds for the same from W. D. Raynor and F. W. Thornton to A. G. Thornton.

3. That the said A. G. Thornton shall perfect the paper writing which he executed to Lancanshire, Morehead & Lowery, if the same shall be produced, and if not that he shall execute to this plaintiff a deed in fee simple for said premises.

4. For such other and further relief as may be proper, together with the cost and disbursements of this suit.

The defendant, J. W. Lancashire, demurred to the complaint, and for cause of demurrer alleged:

1. That it appears upon the face of the complaint, that the plaintiff has no right to maintain the action, because under the deeds which are set forth and specified in the complaint, the plaintiff acquired no title to the land, the interest of the defendant in the execution upon which the said deeds are founded not being subject to sale under execution.

2. And because it is shown by the complaint that the interest of the parties who were dead at the time of the commencement of the original actions under which plaintiff claims were sold and conveyed by the sheriff's deeds which are the foundation of the plaintiff's claim upon the land.

Upon the hearing his Honor sustained the demurrer and the plaintiff appealed.

The case was argued in this court at the last (June) Term, 1875, when an *advisari* was taken. The opinion was filed at this term.

*Hinsdale*, with whom was *J. C. McRae*, argued:

I. The case of *Tally* v. *Reed*, 72 N. C. Rep., 336, has no application to this case, for the reason that there the *title was to be retained until the whole of the purchase money should be*

*paid*, while in our case it appears that the $1,000 in cash and
the note for $3,500, payable in six months after date, were.
*received in payment.* Thornton *taking the risk of the collection
of the note upon himself*, and giving, what he and the guar--
antees intended to be and thought was a good deed for the
land. Thornton cannot now be permitted to take advantage.
of his own wrong, by holding the legal title for security of ·
he note of $3,500. If it was a simple mistake on his part.
*at first* that he left off the seal, it is *now* a fraud for him to ·
set it up as a defence, thus ratifying his mistake. But this.
question is set at rest by the able decision in *Phillips* v..
*Thompson.* (73 N. C. Rep., 543,) decided at the present term.
There it is held distinctly, that where one takes a note *in
payment* for a tract of land and gives what he thinks and in--
tends to be a valid deed for the same, it afterwards appearing
that a mistake was committed in the execution of the deed
that requires reformation, the grantor cannot set up in defence
to the bill for reformation, that the purchase money has not
been paid. So, in the present case Lancashire, Morehead and ·
Lowry, the grantees, had the right to have the deed perfected·
at any time, without tendering the amount of the $3,500 note..
Thornton held the bare legal · title, coupled with *no* interest,.
but subject to the call of the grantees at any moment. This.
is so, whether the contract be regarded as executed under the ·
rule that equity will regard as done that which ought to be ·
done, or whether it be regarded as the same as a contract to
convey land, *the whole of the purchase money being paid.*
Thornton then held the legal estate in trust for Lancashire,.
Morehead and Lowry. It being an unmixed trust, (as where
a bond for title has been given and all the purchase money.
paid,) the grantees or bargainees owned such an interest as.
could be sold under execution against them.

II. The land being held for partnership purposes, went to
Lancashire as surviving partner, for the payment of firm debts,.

and could be sold under execution on a judgment on a firm debt, just as *personal* property in his hands as surviving partner could be so sold. See *Baird* v. *Baird*, 1 Dev. & Bat. Eq., with which *Summey* v. *Patton*, Winst. Eq., does not conflict. Under the old practice, personal property of the intestate in the hands of the administrator was subject to levy and sale under execution.

III. If the land was properly sold in the hands of the surviving partner upon a partnership debt, the title is now in the purchaser, and the heirs of the deceased partners are now proper parties.

IV. The case of *Stith* v. *Lookabill* decides expressly that the bare legal estate of a trustee can be sold under execution at law, and this was in accordance with all the authorities. Hence Thornton's legal title passed to F. W. Thornton and W. D. Raynor *before the bankruptcy of A. G. Thornton*. After the discharge of A. G. Thornton, this same title is reconveyed to him for value. The good faith of this shifting is not called in question *here*. It must be apparent that the fact that Thornton went through bankruptcy while the title was out of him does not make it necessary to bring in his assignee in bankruptcy as a party. We are in no sense asking for relief against a bankrupt's estate. We do not claim through the assignee. The case of *Blum* v. *Ellis*, 73 N. C. Rep., 293, decided at June Term, 1875, has no application. This is the case where it is held that the Bankrupt Court alone has jurisdiction over cases affecting a bankrupt's estate.

V. Defect of parties is not *specified* in the demurrer as a ground of demurrer. The point is made here for the first time. This is not the usual practice. Should, however the court hold that there is a defect of parties, which is fatal, it is asked that the cause may be remanded for the proper parties to be made. We think that if this course is adopted, it should be without costs, as the plaintiff is taken by surprise at a *new* ground of demurrer being urged.

VI. If it should be held that the legal estate passed to the purchaser at execution salé of Lancashire's interest at the sale under judgment on firm debt, and therefore that there is no need for Thornton to complete the deed, it will still be observed that *other* relief is asked; and this bill will not be dismissed as unnecessary, for it may be regarded as a bill *qui-timet*, or to *remove cloud from title*. We have a right to have the deeds which make up our chain of title, registered. This is one of the reliefs demanded.

*Merrimon. Fuller & Ashe*, with whom were *W. McL. Mc-Kay*, and *W. A. Guthrie*, contra:

Lancashire, Morehead & Lowery had *no estate* in the land,, and *no interest subject to execution*.

They had a contract for the purchase of the land. *Blacknall* v. *Parish*, 6 Jones' Eq., 72; *Land* v. *Patrick*, 3 Murphy, 373.

A right under a contract to purchase is not such an equitable estate as may be sold under execution. See *Haford* v. *Tetherow*, 2 Jones, 36; *Sprinkle* v. *Martin*, 66 N. C. Rep., *McKeithan* v. *Walker*. 66 N. C. Rep., 97, *Hutchison* v. *y-mons*, 67 N. C. Rep., 160–161; *Ledbetter* v. *Anderson*, Phil. Eq., p. 32.

A purchaser with only bond for title, not having paid the whole price, has no such interest as is the subject of execution. But *secus* if all the money is paid. *Phillips* v. *Davis*, 69 N. C. Rep., 119.

PEARSON, C. J. The plaintiff acquired nothing by the two deeds of the Sheriff, for the plain reason that the defendants, in the execution, had no estate or interest that could be sold under a *scire facias*. It is the general rule; nothing but a legal estate can be sold under a *fi. fa.*. See the matter discussed; *Tally* v. *Reid*, 73 N. C., 336, affirmed at this term on petition to rehear. That the sheriff, under his writ, can sell nothing but a legal estate, is shown by its words, " of the-

goods and chattels, land and tenements," &c. "Lands and tenements" imply the ownership at law. Such has been the meaning of these words ever since the statutes of *mortmain*, and the time of the conflict between the houses of York and Lancaster. The law takes no notice of uses and trusts nor of equities of any kind, except as is otherwise provided for by statute. An exception is made to the general rule by the act of 1812, which subjects equities of redemption and trusts to sale under a *fi. fa.* Under this statute it is settled, that when a vendee pays a part of the price, and takes bond for title when the balance is paid, his interest or trust cannot be sold under *fi. fa.* When a purchaser takes a bond for title, it would seem to be as strong a case as when he takes a paper writing, purporting to be a deed, but which can only be allowed the effect of an agreement to make title, or as furnishing the ground to have the instrument converted into a deed on the ground of mistake, which could hardly be allowed except on payment of the balance of the price; but however this may be, the vendee did not acquire the legal estate, and at most, had only an equity, which certainly does not come within the operation of the act of 1812.

No error.

PER CURIAM.　　　　　　　　　　　　Judgment affirmed.